## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JAMES R.,

                Claimant,

      v.

MARTIN O'MALLEY,
Commissioner of Social Security,

                Respondent.

No. 22 C 432

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

James R.[1] ("Claimant") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying his application for disability insurance benefits. For the reasons set forth below, Plaintiff's Motion for Summary Judgment [ECF Nos. 16, 17] seeking remand is denied, and the Commissioner's Motion for Summary Judgment [ECF Nos. 18, 19] is granted.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## BACKGROUND

On April 22, 2021, the Administrative Law Judge ("ALJ") denied Claimant's application for Title XVI supplemental security income. (R.13-26). The Appeals Council declined review (R.1-6), leaving the ALJ's decision as the final decision of the Acting Commissioner of Social Security reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## DISCUSSION

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020)

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since April 30, 2019, the alleged onset date of his disability and his application date. (R.15). At step two, the ALJ found that Claimant had the severe impairments of schizoaffective disorder, major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, and obsessive-compulsive disorder. (*Id.*) At step three, the ALJ concluded that Claimant's mental impairments, considered singly and in combination, did not meet the criteria of a listing. (R.16-18). At step four, the ALJ found that Claimant was unable to perform any past relevant work but has the RFC to perform work at all exertional levels with certain nonexertional limitations, including restricting Claimant to "simple, routine and repetitive one-two step instructions," no "fast-paced hourly production goals" but

allowing for "end of day goals," "occasional interaction with supervisors and coworkers" but no "tandem or coordinated tasks with coworkers," "brief and superficial interaction with the general public," and "simple, routine changes and pressures in the workplace." (R.18-25). At step five, the ALJ found that jobs existed in significant numbers in the national economy that Claimant could perform, and thus he is not disabled. (R.25-26). Accordingly, the ALJ concluded Claimant has not been disabled since April 30, 2019. (R.37).

Claimant raises two arguments challenging the ALJ's decision: (1) the ALJ erred in evaluating and weighing certain medical opinions and (2) substantial evidence did not support the ALJ's finding that there were significant jobs in the national economy that Claimant could perform. *See* Plaintiff's Opening Brief [ECF No. 17] ("Motion").

## A. ALJ Did Not Err in Weighing Certain Medical Opinions

Claimant argues the ALJ erred in evaluating certain medical opinions, including determining that Dr. Amdur's opinion finding Claimant was unable to work was not persuasive and that Dr. Lace's opinion that Claimant was able to work with certain limitations was persuasive.

The regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the most important factors in evaluating any doctor's opinion are supportability and consistency. *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022); 20 C.F.R. § 404.1520c(c)(2). Other factors to be considered include the doctor's

4

relationship with the claimant, specialization, and any other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a) and (c).

The ALJ provided a detailed explanation for why she was not persuaded by the opinion of Claimant's evaluating psychiatrist, Dr. Amdur:

> While Dr. Amdur supported his opinion with an explanation and his evaluation of the claimant, his findings are inconsistent with the record. Specifically a finding of an inability to relate effectively to coworkers or supervisors is inconsistent with the examinations noting the claimant was calm and coherent (4F; 8F; 11F) and cooperative (5F). The claimant's reports of OCD type behaviors and obsessional thinking were not reported elsewhere in the record nor has the claimant been diagnosed with OCD by his treating psychiatrist, Dr. Shikari. This is particularly noteworthy as Dr. Shikari saw the claimant just weeks earlier on August 17, 2020 and the claimant was stable (11F/18). The claimant's reports of being overtalkative, and the reports that the interview was difficult for this reason, appears to be an anomaly – as the claimant's records noted at most monotonous speech (4F/20, 26) but otherwise the claimant was calm, coherent and had normal speech (7F/7-8, 10; 8F/26, 70). While Dr. Amdur found a moderate cognitive impairment based upon MoCa testing, nowhere else is such a cognitive impairment noted – not by the claimant's psychiatrist, not by the claimant's mother where understanding and following instructions is not checked (4E/9). Moreover, the claimant was able to obtain his GED on his own accord, lending further support for greater cognitive abilities than noted by Dr. Amdur. Further, the opinions are inconsistent with the claimant's relatively routine, conservative treatment and the effectiveness of this treatment and the claimant's daily activities discussed above. As such, Dr. Amdur's opinions are not persuasive.

(R.23). As addressed below, Claimant challenges the ALJ's conclusion with respect to Dr. Amdur's opinion on various grounds, but ultimately fails to demonstrate that substantial evidence did not support the ALJ's opinion that Dr. Amdur's opinion was

not persuasive.[3]

Claimant first argues the ALJ improperly found Dr. Amdur's opinion that Claimant was unable to relate effectively to coworkers or supervisors was inconsistent with Claimant's calm demeanor at other medical examinations. Motion [ECF No. 17] at 9. Claimant says given his long treatment history with his treating psychiatrist, Dr. Shikari, one could "reasonably conclude" Claimant's familiarity with his regular doctor, the structure of their appointments, and what he would be asked during appointments could explain his calm demeanor when he was examined by Dr. Shikari. [*Id.*] Claimant says the ALJ erred in not considering these differences in settings when comparing the examinations by Dr. Amdur and Dr. Shikari, which Claimant contends is required by Listing 12.00. [*Id.*][4]

Listing 12.00 addresses factors an ALJ should consider when evaluating

---

[3] The Commissioner notes that Dr. Amdur examined Claimant only once by video and was paid by Claimant's attorney. Claimant responds that the ALJ did not raise the issue of how Dr. Amdur was paid to support her decision and, for that reason, to the extent the Commissioner suggests this undermines Dr. Amdur's credibility, that contention is barred by the *Chenery* doctrine. Reply [ECF No. 20] at 1-2. The ALJ notes that Dr. Amdur evaluated Claimant at the request of his representative, and that is an accurate factual statement. The Court will not speculate whether the ALJ's assessment of Dr. Amdur's opinion was influenced by who hired or paid him given that the ALJ is silent about that matter, and instead bases this decision on the reasoning provided in the ALJ's opinion.

[4] On Reply, Claimant notes Dr. Lace, whose opinion the ALJ found persuasive, acknowledged Claimant's mental status exams were "variable," suggesting this is inconsistent with any conclusion that Claimant's examinations were "overwhelmingly normal." Reply [ECF No. 20] at 3 (citing R.705). The ALJ, however, did not find Claimant's mental health examinations were "overwhelmingly normal"; to the contrary, the ALJ noted the record reflected a range of mild symptoms as well as some normal findings on mental examinations. (R.24.) Moreover, Claimant does not reconcile this argument with Dr. Lace's opinion that Claimant was still able to work with certain limitations, which the ALJ found to be consistent with the record evidence as to Claimant's examinations. (R.24.)

evidence of functioning in unfamiliar and familiar settings. Listing 12.00(C)(6)(a) & (b), 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Claimant characterizes Listing 12.00 as instructing that "an individual's ability to complete tasks in a highly structured, less demanding, or more supportive environment than a typical work setting does not necessary demonstrate an ability to complete tasks in the context of competitive employment." [*Id.*] Listing 12.00 does provide that evidence of an ability to complete tasks in structured situations that may be "less demanding or more supportive than typical work settings" does not necessarily demonstrate an ability to complete tasks "in the context of regular employment during a normal workday or work week." Listing 12.00(C)(6)(b), 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

As Claimant recognizes, however, the regulations also instruct that evidence of more limited functioning in unfamiliar settings (as Claimant suggests were the circumstances of the one-time video evaluation by Dr. Amdur) do not necessarily indicate how Claimant would respond in a consistent work setting. Reply [ECF No. 20] at n.2; Listing 12.00(C)(6)(a), 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("We recognize that evidence about your functioning in unfamiliar situations does not necessarily show how you would function on a sustained basis in a work setting. In one-time, time-limited, or other unfamiliar situations, you may function differently than you do in familiar situations. In unfamiliar situations, you may appear more, or less, limited than you do on a daily basis and over time."). Claimant does not explain why his behavior during his examination by Dr. Amdur is more indicative of how he would behave in a routine work setting than his behavior during his regular visits with his

7

treating psychiatrist, and the ALJ was not required to go down that path on this record.

The Court will not second guess the ALJ's reasonable conclusion that Claimant's calm and coherent demeanor during his regular examinations by his treating psychiatrist is more indicative of how Claimant would respond in a regular work setting. Although Claimant views this evidence differently than the ALJ, that is not a basis for the Court to second guess the ALJ's findings. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review."). While the ALJ does not expressly state she considered the unfamiliar setting of Dr. Amdur's examination as compared to the consistent setting of Dr. Shikari's examinations, the ALJ did observe that Dr. Amdur evaluated Claimant by video on one occasion at the request of his attorney while Claimant regularly saw his treating psychiatrist. (R.20-21.) Thus, the ALJ was aware of the differences in settings but, in weighing the evidence, found Claimant's behavior with his treating psychiatrist to be more indicative of his ability to interact with others. That is not an unreasonable conclusion or reading of the record evidence. For these reasons, the Court views the ALJ's analysis as consistent with the recommendation of Listing 12.00.

Claimant also argues the ALJ improperly discounted Claimant's reports of OCD merely because there was no OCD diagnosis by his treating psychiatrist. Motion [ECF No. 17] at 9-10. The Court disagrees. The ALJ identified record evidence that

reasonably can be viewed as inconsistent with Dr. Amdur's opinion that Claimant's OCD behaviors would preclude his ability to work. The ALJ noted Dr. Amdur considered Claimant's reported OCD behaviors but observed these behaviors were not reported elsewhere in the record, including in the evaluations by Claimant's treating psychiatrist. (R.21-23.) Moreover, the ALJ contrasted Dr. Amdur's conclusions about Claimant's OCD behaviors with a stable examination report from Claimant's treating psychiatrist a few weeks earlier. (*Id.* (citing 11F/18, at R.652).) Claimant speculates as to why Dr. Shikari, his treating psychiatrist, may not have observed the OCD behaviors or why Claimant did not report such behaviors to his psychiatrist. *See* Motion [ECF No. 17] at 10. Nevertheless, the ALJ was entitled to consider the reports from Claimant's treating psychiatrist in assessing the persuasiveness of Dr. Amdur's opinion that Claimant's OCD behaviors would preclude him from performing any work.

Claimant also says the ALJ's step two determination that Claimant's OCD was a severe impairment is logically inconsistent with the ALJ's findings with respect to Dr. Amdur's opinion on Claimant's OCD behaviors. Motion [ECF No. 17] at 9-10; Reply [ECF No. 20] at 3. As the Seventh Circuit explained in another case addressing the significance of a step two finding, the ALJ's step two finding only determined that Claimant's OCD was not "'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities,'" it did not resolve Claimant's ability to work with additional limitations. *Meuser v. Colvin*, 838 F.3d 905, 910–11 (7th Cir. 2016) (quoting SSR 96–3p, 1996 WL 374181, at *1 (July 2, 1996)). Rather, "[t]he Step

2 determination is 'a de minimis screening for groundless claims'" and an ALJ should properly conduct "an assessment of the functional limitations caused by" such an impairment at the later steps of the analysis. *Id.* (internal citations omitted); *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) ("When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms."). Accordingly, the ALJ's threshold step two finding of a severe OCD impairment was not logically inconsistent with the ALJ's subsequent consideration of whether Dr. Amdur's opinion as to Claimant's OCD behaviors was consistent with record evidence as to Claimant's functioning.

Claimant's challenge to the ALJ's weighing of Dr. Amdur's opinion with respect to Claimant's OCD essentially boils down to an argument that the RFC failed to accommodate his OCD symptoms. But Claimant does not explain why the limitations included in the RFC fail to adequately accommodate Claimant's OCD behaviors. "It is not enough to criticize the ALJ's decision about [his] functional capacity to work. [Claimant] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). While Dr. Amdur opined that Claimant's "obsessional thinking" would markedly degrade his ability to relate or converse with others (R.625), the ALJ disagreed and found the record evidence did not support such extensive limitations.

Claimant points to Dr. Lace's opinion that the record supported a finding of OCD and argues the ALJ generally found Dr. Lace's opinion persuasive, but Dr. Lace also determined Claimant remained able to work with appropriate limitations. (R.704-709). In addition, contrary to Claimant's characterization, the ALJ did not improperly conclude there was no other record evidence that Claimant was overtalkative. Rather, the ALJ found it appeared to be an "anomaly" that Claimant was overtalkative during Dr. Amdur's medical examination and supported that finding by contrasting reports of Claimant's normal speech during other examinations by medical providers. (R.23.) The ALJ was not obligated to address all instances in the record that Claimant suggests might indicate a tendency for overtalking. *See* Motion [ECF No. 17] at 10 (arguing overtalking was supported by other evidence in the record). *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning.").

Ultimately, Claimant fails to "explain how the RFC determination should have been different" to address or take into consideration Dr. Amdur's report of his OCD symptoms or his tendency to overtalk. *See Morales*, 103 F.4th at 471. The ALJ acknowledged some "moderate limitations" with respect to Claimant's "interacting criterion" and limited him to occasional interactions with supervisors or coworkers, and prohibited tandem or coordinated tasks with coworkers. (R.24.) The RFC also restricted Claimant to "brief and superficial interaction with the general public."

(R.18.) It is, therefore, unclear what, if anything, more the ALJ needed to do to take into account Dr. Amdur's assessment other than, as Claimant apparently contends, to find it to be work preclusive. For all these reasons, Claimant's criticism that the ALJ did not adequately account for his OCD symptoms or overtalking is not a basis for remand.

Claimant then says the ALJ improperly cherry-picked evidence to discount Dr. Amdur's finding of moderate cognitive impairment based on an objective test (the "Montreal Cognitive Assessment" or "MoCA" test) which Claimant says is a "diagnostic screening test that has been proven reliable through multiple validation studies." *See* Motion [ECF No. 17] at 10. Claimant says the ALJ relied on Claimant's self-description of himself as incredibly smart and discrepancies in the record as to Claimant's special education history to improperly reject the results of the MoCA test. Motion [ECF No. 17] at 10-11. Contrary to Claimant's characterization, the ALJ discounted Dr. Amdur's opinion of a moderate cognitive impairment for other reasons. Specifically, the ALJ noted the absence of any reports of such cognitive impairment by Claimant's treating psychiatrist as well as the lack of other record evidence supporting a cognitive impairment. (R.23). The ALJ also noted "claimant was able to obtain his GED on his own accord, lending further support for greater cognitive abilities than noted by Dr. Amdur" and pointed to "the claimant's relatively routine, conservative treatment and the effectiveness of this treatment and the claimant's daily activities discussed above." (*Id.*) Claimant does not directly dispute any of these rationales offered by the ALJ, instead focusing on references to

Claimant's cognitive abilities made elsewhere in the ALJ's opinion. For these reasons, the ALJ did not err in finding Dr. Amdur's opinion as to Claimant's cognitive impairment to be inconsistent with record evidence.

In addition, the ALJ limited Claimant to "simple, routine and repetitive one-two step instructions." (R.18.) Once again, Claimant does not explain whether or what types of additional restrictions were needed in light of the moderate cognitive impairment assessed by Dr. Amdur. *See Tamala K. v. O'Malley*, 2024 WL 1050154, at *6 (N.D. Ill. Mar. 11, 2024) ("Plaintiff does not explain how Dr. Amdur's findings in either the mental status examination or the MoCA indicate a particular error in the formulation of the RFC and therefore has not demonstrated reversible error on that ground."). For similar reasons, Claimant's argument that the ALJ failed to credit Claimant's mother's statements about his special education history or that the ALJ improperly credited Claimant's self-assessment of his intelligence do not provide a basis for second-guessing the limitations in the RFC. In addition, the ALJ found the opinions of state agency psychological consultants that Claimant "was capable of simple, unskilled (one-to-two step) routine and repetitive tasks" persuasive. (R.22-23.)[5] The Court therefore defers to the ALJ's finding regarding the functional limitations warranted by record evidence of Claimant's cognitive impairment.

---

[5] Claimant says these opinions were "not timely" because they were issued in July 2019 and January 2020 and did not include review of later in time records including Dr. Amdur's report. Reply [ECF No. 20] at 1. The Court is not persuaded by this argument. The reports of the two state agency psychologists were relevant for the ALJ to consider as they were issued after the alleged disability onset date of April 30, 2019. Moreover, it was not illogical for the ALJ to consider the consistency of those reports with other record evidence regarding Claimant's mental health or to find the reports persuasive, particularly as Claimant does not claim his mental health had substantially worsened as of the time of Dr. Amdur's evaluation.

Claimant also argues the ALJ improperly found Claimant's history of conservative treatment to be inconsistent with the extent of the limitations described in Dr. Amdur's opinion, stating "[t]here is no requirement that disability must be evidenced by multiple hospitalizations." Motion [ECF No. 17] at 11. Again, this mischaracterizes the ALJ's opinion. The ALJ found Claimant's "treatment has been routine" including "regular treatment with a psychiatrist" and noted he is "prescribed medication" but also observed "[t]here is no evidence of inpatient psychiatric hospitalizations" or of "counseling or therapy." (R.20.) The ALJ also found "the record suggests that the claimant's treatment has been helpful" pointing to various instances where his symptoms were controlled or improved with medication. (*Id.*) "]T]he Seventh Circuit has held that it is reasonable for an ALJ to consider a claimant's conservative treatment." *See Anthony G. v. Saul*, 2020 WL 439964, at *10 (N.D. Ill. Jan. 28, 2020) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)); *Carolyn R. v. Kijakazi*, 2023 WL 5748198, at *4–5 (N.D. Ill. Sept. 6, 2023) (collecting cases). The Court finds the ALJ did not err in considering Claimant's history of conservative treatment with medication as well as the effectiveness of such treatment in managing Claimant's symptoms.

Claimant then points to record evidence that he contends supports Dr. Amdur's opinion and which Claimant says the ALJ did not properly consider. Claimant points

---

*See Emma U. v. O'Malley*, 2024 WL 3860015, at *8 (N.D. Ill. Aug. 19, 2024) ("there was nothing 'illogical'" in ALJ's consideration of state agency reviewers' opinions that plaintiff had mild mental limitations in 2018 as "generally consistent with plaintiff's improved condition" after a hospitalization in November 2019).

to Dr. Amdur's findings regarding Claimant's inadequate hygiene and how it would negatively affect his ability to interact with co-workers and says the ALJ improperly dismissed these hygiene problems as occurring only during the Covid-19 pandemic. Motion [ECF No. 17] at 11. The ALJ did acknowledge Claimant had "some personal hygiene neglect during the Covid-19 pandemic," referencing reports from medical examinations in May 2020, August 2020 and September 2020. (R.18.) But the ALJ also noted instances of hygiene neglect reported in a medical examination in July 2019 before the onset of the Covid-19 pandemic (which is referenced by Claimant in his Motion, *see* [ECF No. 17] at 11). (R.21.) On the other hand, the ALJ also reported a medical examination in August 2020 where no hygiene problems were reported (R.21), as well as Claimant's own reports that he did not have difficulties in personal care or grooming. (R.18.) The Court therefore declines Claimant's invitation to reweigh competing evidence in the record about Claimant's hygiene deficits that was expressly considered by the ALJ.

Claimant also argues Dr. Amdur's opinions are corroborated by the statements of Claimant's mother. Claimant says the ALJ improperly treated his mother's statements as "opinion" rather than fact. Motion [ECF No. 17] at 12. This misconstrues the ALJ's opinion, which instead provided a reasoned basis for discounting the credibility and consistency of Claimant's mother's statements. The ALJ correctly stated she was not required to consider the mother's statement as opinion evidence under the regulations. (R.24.) Nevertheless, the ALJ explained she did consider and weigh the factual statements by Claimant's mother, including her

reports that Claimant had extensive physical problems and back pain that were not documented in the record. (*Id.*) The ALJ also found Claimant's mother's description of his daily depression symptoms to be inconsistent with record evidence showing he was not consistently diagnosed with depression, had never been hospitalized on an inpatient or outpatient basis for depression, and that his symptoms were effectively controlled with treatment. (R.24.) Based on these inconsistencies between the mother's statements and record evidence, which Claimant does not address, the ALJ concluded Claimant's mother's statements were not persuasive.[6]

Claimant then argues the ALJ erred in finding persuasive Dr. Lace's opinion about Claimant's ability to work with certain restrictions which was offered by interrogatory following the hearing. Claimant contends Dr. Lace's brief opinion merely summarized the evidence and failed to provide sufficient explanation. Motion [ECF No. 17] at 12-14. Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). The ALJ

---

[6] The ALJ was not obligated to specifically address whether all of Claimant's mother's testimony about his abilities to perform daily tasks were consistent with Dr. Amdur's opinion that Claimant "would struggle to complete tasks in a work setting." Motion [ECF No. 17] at 12. *See Warnell*, 97 F.4th at 1053; *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (courts of this Circuit have consistently held that so long as the ALJ did not "ignore[ ] an entire line of evidence that supports a finding of disability," she need not "discuss every piece of evidence in the record") (collecting cases). In addition, it is also not entirely clear to the Court why the mother's descriptions of Claimant's unwillingness to complete chores or to pick up messes left by their dog, Motion at 12, necessarily suggests that the limitations in the RFC to address Claimant's "ADHD related symptoms of difficulties focusing, concentrating, and completing tasks" are insufficient. (R.24.)

found Dr. Lace's opinion persuasive because he "supported his findings with a detailed explanation and a review of the evidence" and "his findings are consistent with the evidence of record" including as to Claimant's "routine mental health treatment," mental status examinations that showed normal or mild symptoms, and Claimant's daily activities. (R.24.) While Claimant takes issue with the lack of record and page citations in Dr. Lace's admittedly brief opinion, Reply [ECF No. 20] at 6-7, Claimant provides no authority suggesting that the absence of such citations in a medical opinion provides grounds to conclude the physician failed to adequately review the record. Moreover, Claimant does not address the ALJ's reasoning that Dr. Lace's conclusions regarding Claimant's ability to work were consistent with other evidence of record as to which the ALJ provided specific record and page citations. (R.24.) In addition, while Claimant says Dr. Lace does not explain why he concluded Dr. Amdur's opinion is not supported by the record, the ALJ did not rely on this aspect of Dr. Lace's opinion in support of her explanation for finding Dr. Amdur's opinion not to be persuasive. Finally, Claimant takes issue with Dr. Lace's reference to Claimant's marijuana use, suggesting because Dr. Lace provided specific citations to evidence as to this issue, "one must assume it was the factor most important" to Dr. Lace in reaching his conclusions. Motion [ECF No. 17] at 13. But Dr. Lace did not say that and, in any event, the ALJ did not reference or rely on this aspect of Dr. Lace's opinion.[7]

---

[7] The Court disagrees that Dr. Lace's citation to record evidence regarding marijuana usage triggered the requirements of the substance abuse regulations. Motion [ECF No. 17] at 13.

For all these reasons, the Court finds the ALJ did not err in weighing the medical opinions and the RFC was supported by substantial evidence.

## B. ALJ's Step Five Determination Was Supported By Substantial Evidence

Claimant's argues the ALJ's step five determination is not supported by substantial evidence because the ALJ did not account for the discrepancy between the vocational expert's job number estimates and those Claimant submitted post-hearing from SkillTran, a job estimate software program, and because the ALJ did not resolve an obvious discrepancy between the RFC's restriction to one to two step tasks and the multiple tasks involved in the cleaner job.

It is the Commissioner's burden at step five to establish that there are a significant number of jobs in the national economy that Claimant could perform, and an ALJ's reliance on a vocational expert's testimony is often found to be substantial evidence to support this step five conclusion. *Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022); *Biestek v. Berryhill*, 587 U.S. 97, 105 (2019) ("a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data"). Here, the ALJ relied on the vocational expert's testimony that there were 125,000 jobs available in the national economy that Claimant would be able to perform with the limitations provided in the RFC. (R.25.) After the hearing, Claimant submitted evidence from the SkillTran JobBrowser software that Claimant

---

Claimant does not identify any evidence suggesting he had a substance abuse disorder, nor did the ALJ.

says reduced the available jobs to 64,136 nationally, which the ALJ did not address in her opinion. Motion [ECF No. 17] at 14-15.

The Commissioner initially argues that Claimant waived any challenge to the vocational expert's testimony because he did not object to the testimony or ask to keep the record open during the hearing. Response [ECF No. 19] at 12. Claimant responds that the waiver cases relied on by the Commissioner are distinguishable because they addressed situations where there was no cross-examination of the vocational expert during the hearing, while here, the expert was asked about methodology and the record was left open post-hearing. Reply [ECF No. 20] at 7-8 (citing R.62).

While the ALJ left the record open, the transcript reflects that was for the submission of additional medical records, not rebuttal job estimates or other objections to the vocational expert's opinions. (R.62.) Moreover, Claimant's counsel did not raise objections to the vocational expert's testimony at the hearing. Rather, counsel asked the vocational expert whether he considered other job estimate sources such as Skilltran and the expert testified that he did not use those programs. (R.60-61.) Claimant's counsel did not object to the vocational expert's testimony. (*Id.*) In the Court's view, this record suggests that Claimant waived objections to the vocational expert's testimony and therefore the ALJ was not obligated to reopen the record to consider Claimant's post-hearing rebuttal job estimates. *See Donahue v. Barnhart*, 279 F.3d 441, 446–47 (7th Cir. 2002) ("Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late. An ALJ is not obliged to reopen the record. On the record as it stands—that is, with no questions asked that reveal any shortcomings

19

in the vocational expert's data or reasoning—the ALJ was entitled to reach the conclusion she did.").

Nevertheless, the Court need not resolve the waiver issue because any failure by the ALJ to consider Claimant's post-hearing job number estimates was harmless error. Claimant says courts have found similar estimates of national job availability (approximately 64,000 jobs) fail to meet the significant number threshold but provides no binding authority to support this argument. Claimant cites a non-precedential case from another district finding 120,350 jobs was not significant. Motion [ECF No. 17] at 15 (citing *Sally S. v. Berryhill*, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019)).[8] Claimant, however, acknowledges in his Reply that "what constitutes a significant number of jobs has not been definitely settled." Reply [ECF No. 20] at 8. The Seventh Circuit has found, however, that a claimant's reliance on *Sally S.* for a similar position was "misplaced," reasoning that while that non-binding decision appropriately focused on the difference between national and regional job numbers, the district court did "not account for this court's decision in *Weatherbee*, where we concluded that 140,000 national jobs was a 'significant' number under step five of the analysis." *Milhem*, 52 F.4th at 695–97 (citing *Weatherbee v. Astrue*, 649 F.3d 656, 572 (7th Cir. 2011)). In *Milhem*, the Seventh Circuit acknowledged "[o]ur

---

[8] It appears that courts in the Northern District of Indiana no longer follow the reasoning in *Sally S.* See *Jennifer K. v. Kijakazi*, 2022 WL 766164, at *4 (N.D. Ind. Mar. 14, 2022), *aff'd sub nom. Karr v. Kijakazi*, 2023 WL 3480924 (7th Cir. Mar. 16, 2023) ("*Sally S.* was decided in 2019 and, quite frankly, has proven unworkable in the ensuing years. Thus, later decisions from this Court have retreated from the *Sally S.* holding.").

circuit's case law does not provide a clear baseline for how many jobs are needed" beyond "*Weatherbee*, in which we concluded that 140,000 jobs in the national economy was 'well above the threshold for significance,'" and ultimately held 89,000 jobs in the national economy was a significant number, further noting "[t]his ruling is also in accord with the numbers of national jobs held to be significant by other circuits," citing cases finding a range between 10,000 and 32,000 national jobs to be significant. *Id.* (collecting cases from Sixth, Eighth and Ninth Circuits; *see*, *e.g.*, *Altaf J. v. Kijakazi*, 2022 WL 4534691, at *6 (N.D. Ill. Sept. 28, 2022) (collecting cases and noting "[t]he Third, Sixth, and Eighth Circuits have all found that fewer than 28,000 jobs is a significant number of jobs in the national economy"). Accordingly, this Court will defer to the weight of authority suggesting that Claimant's rebuttal evidence of 64,000 jobs in the national economy still constitutes evidence of significant numbers of available jobs. For this reason, the Court concludes the ALJ's claimed failure to consider Claimant's rebuttal job number evidence was harmless error.

Claimant also argues the ALJ erred in failing to address the "obvious discrepancy" between the RFC restriction to "one to two step tasks" and the "multiple tasks involved in just the position of cleaner" such as sweeping, dusting, emptying trash, or mopping. Motion [ECF No. 17] at 15. The Commissioner responds that Claimant provides no support for the claim that the tasks required for a cleaner position involve more than one-to-two step instructions. Response [ECF No. 19] at 13-14. The Commissioner further argues that since this objection was not raised at the hearing or in post-hearing briefing, it was Claimant's burden to show this

discrepancy was "obvious" such that the ALJ should have addressed it without any assistance from the parties, which Claimant does not dispute on Reply. [*Id.*] (citing *Givens v. Colvin*, 551 F. App'x 855, 863 (7th Cir. 2013); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018)).

The RFC limited Claimant to "simple, routine and repetitive one-two step instructions" but did not specify the job itself must be limited to only one or two tasks. (R.18.) Claimant's argument misses this nuance, instead focusing on the multiple tasks a cleaner may perform, rather than how complicated those tasks are or how many instructional steps are required to teach an employee to perform those tasks. For these reasons, the Court finds Claimant has not established it is obvious the tasks required of a cleaner require more than one-to-two step instructions, and therefore the ALJ did not err in not addressing this purported discrepancy.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [ECF Nos. 16, 17] seeking remand is denied, and the Commissioner's Motion for Summary Judgment [ECF Nos. 18, 19] is granted. The decision of the Commissioner is affirmed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 25, 2024